# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELISA FOGARTY, | ) |
| | ) |
| Claimant, | ) No. 17 CV 2977 |
| | ) |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| NANCY BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Elisa Fogarty ("Claimant") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.] The parties have filed cross-motions for summary judgment [ECF Nos. 18 and 25] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 18] is granted, and the Commissioner's Motion [ECF No. 25] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Effective June 12, 2013, Claimant filed an application for DIB, alleging a disability onset date of November 7, 2011. (R. 183–191.) The application was denied initially and upon reconsideration, after which Claimant requested a hearing before an administrative law judge

"(ALJ"). (R. 14.) On August 3, 2015, Claimant, represented by counsel, appeared and testified at an administrative hearing before ALJ Patricia Witkowski Supergan. (R. 30–90.) The ALJ also heard testimony from medical expert ("ME") Ashok Jilhewar, M.D., and vocational expert ("VE") Thomas Dunleavy. (*Id.*)

On December 10, 2015, the ALJ denied Claimant's claim for DIB, based on a finding that she was not disabled under the Act. (R. 14–24.) The ALJ's written opinion followed the five-step evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in any substantial gainful activity ("SGA") since the application date of November 7, 2011. (R. 16.) At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease of cervical spine; congenital IgA deficiency; congenital heart defect (duplication of vena cava); and status post pulmonary embolism. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (*Id.*)

The ALJ then found that Claimant had the residual functional capacity ("RFC")[1] to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with the following limitations:

> [S]he can occasionally climb ramps and stairs but never ladders, ropes or scaffolds. She can occasionally balance, stoop but never kneel, crouch and crawl. She can frequently reach in all directions; including overhead with the left upper extremity. The claimant can frequently handle, finger and feel with the left upper extremity. The claimant cannot tolerate any exposure to or work around vibration and hazards such as moving machinery or unprotected heights.

(R. 17.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 23.) Finally, at step five, the ALJ found that there were jobs that exist in

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

significant numbers in the national economy that Claimant could perform. (R. 23.) Specifically, the ALJ found Claimant could work as a telemarketer, sorter, or visual inspector. (R. 24.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. *Id*.) The Appeals Council declined to review the matter on February 17, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is

3

deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts the ALJ made five errors. First, Claimant argues that the ALJ erred in weighing the opinion of her treating physician. Second, Claimant contends that the ALJ's RFC determination is not supported by substantial evidence. Third, Claimant asserts that the ALJ failed to develop the record regarding Claimant's pulmonary impairment. Fourth, Claimant argues that the ALJ erred in weighing Claimant's subjective symptom complaints. Finally, Claimant asserts that the ALJ's step five determination is not supported by substantial evidence.

**A.    The Treating Physician's Opinion**

Claimant first argues that the ALJ erred in evaluating the opinion of Claimant's treating physician Larry Najera, M.D., thereby violating the "treating physician rule."[2] [ECF No. 18, at 7–14.] By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician. "The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*,

---

[2] The SSA recently adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (*Id.*)

4

774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Id.*; *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted).

Even if a treating physician's opinion is not given controlling weight, the ALJ must still determine how much weight to give it. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)–(6). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527).

Dr. Najera completed a cervical spine medical source statement in August of 2015. (R. 907, 1006–09.) Dr. Najera diagnosed Claimant with cervical radiculopathy and described her prognosis as fair. (R. 1006.) Dr. Najera opined that claimant would be able to sit and stand for only fifteen minutes at a time and only able to sit, stand, or walk, less than two hours within an eight-hour workday. (R. 1007.) He further opined that Claimant should be expected to be absent from work more than four days per month due to her impairments. (R. 1009.)

5

The ALJ said she considered Dr. Najera's opinion and concluded that "his opinion is based on the claimant's subjective complaints and his opinions of the functional limitations appear to be a sympathetic opinion as there is little support for it even in his own objective findings." (R. 22.) The Court finds that the ALJ improperly discounted the opinion of Dr. Najera, an error necessitating remand.

First, although an ALJ may discount a treating physician's opinion if it is "based solely on the patient's subjective complaints," the ALJ must give an explanation of how he reached such a conclusion. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Hampton v. Colvin*, 2013 WL 6577933, at *7 (N.D. Ill. Dec. 13, 2013). The Seventh Circuit has cautioned with respect to patient complaints of chronic pain that "physical pain often cannot be explained through diagnostics," and that it thus is "illogical to dismiss the professional opinion of an examining [physician] simply because that opinion draws from the claimant's reported symptoms." *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) (unpublished) (citations omitted).

Furthermore, "[a]lmost all diagnoses require some consideration of the patient's subjective reports, and certainly [Claimant's] reports had to be factored into the calculus that yielded the doctor's opinion." *McClinton v. Astrue*, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012). To discount Dr. Najera's finding as being unduly swayed by Claimant's subjective complaints, the ALJ should have pointed to evidence in the record that would "suggest that Dr. [Najera] disbelieved [Claimant's] descriptions of her symptoms, or that Dr. [Najera] relied more heavily on [Claimant's] descriptions than . . . his own clinical observations." *Guerin v. Colvin*, 2015 WL 5950612, at *8 (N.D. Ill. Oct. 13, 2015); *see also Davis v. Astrue*, 2012 WL 983696, at *19 (N.D. Ill. Mar. 21, 2012) ("The ALJ fails to point to anything that suggests that the weight [Plaintiff's treating psychiatrist] accorded Plaintiff's reports was out of the ordinary or unnecessary, much less
6

questionable or unreliable."). Here, the ALJ failed to explain her reasons for concluding that Dr. Najera's opinion "reflects an uncritical and unexamined acceptance of [Claimant's] self-reporting, as opposed to [Dr. Najera's] medical opinion based on objective medical evidence in combination with [Claimant's] reports of symptoms." *Ritchie v. Colvin*, 2016 WL 7324567, at *7 (N.D. Ill. Dec. 16, 2016). Thus, the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 834 (7th Cir. 2014).

Moreover, Dr. Najara identified a number of objective findings on his medical source statement supportive of his assessed limitations, including tenderness, muscle spasms and weakness, sensory loss, reflex loss, reduced grip strength, and abnormal posture. (R. 1006.) The ALJ focused on a May 2015 pain clinic report to support her assertion that Dr. Najera's treatment notes are inconsistent with his medical opinion. The ALJ said this particular treatment note stated that Claimant had full motor strength of the bilateral upper extremities and no swelling, edema, or erythema in her cervical spine. (R. 22, 891–92.) While that is true, Dr. Najera also stated that he was unable to complete the test for spine strength and tone due to Claimant's pain. (R. 891–92.) This singular progress note, quoted selectively by the ALJ and referenced "by way of example," is not inconsistent with Dr. Najera's opinion that Claimant had postural limitations and, frankly, is not representative of the medical record as a whole. (R.22.)

The medical record is replete with evidence that further supports Dr. Najera's opinion. First, Dr. Najera's own treatment notes indicate that he was unable to test Claimant's spine strength and tone for at least 18 months due to Claimant's pain. (R. 891–907.) A November 2011 MRI of the cervical spine revealed left paramedian and lateral C6-C7 disc herniation with cord encroachment and central canal narrowing eccentric to left, as well as degenerative bulging disc with posterolateral spurs at C5-C6 with mild central canal and right foraminal narrowing. (R.

7

486.) Dr. Abusharif of the Pain Treatment Centers of Illinois opined that Claimant's symptoms were consistent with these MRI findings. (R. 328.) Further, Claimant's physical therapy reports over fifteen sessions in 2012 show markedly diminished C7 pattern with testing, poor postural awareness, decreased mobility, limited cervical active range of motion, markedly diminished C7 myotome, left triceps weakness, and diminished left C7 deep tendon reflex. (R. 289–301.) Although Claimant's physical therapist noted increased range of motion and good progress, the therapist noted after seven sessions that "her continued pain and above impairments are of concern. I feel she would benefit from further medical evaluation prior to resuming Physical Therapy." (R. 294–95.) In 2013, Claimant was again referred to physical therapy when her symptoms returned. (R. 303–04.) The physical therapist again noted increased range of motion, but noted impaired gait, new pain in her left buttock and posterior thigh, left weakness and pain, restricted left hip external rotation, bilateral hip extension and lumbar flex and extensions range of motion, and left lower extremity nerve tissue tension. (R. 308–09.)

Claimant also underwent multiple tests and imaging of her spine in 2014. An MRI in July of 2014 demonstrated disc space narrowing that was most severe from C5-C7, as well as end plant spurring at C4-C5 and C5-C6. (R. 998–99.) There also was a broad based annular bulge with effacement of the ventral thecal sac at C5-C6. (*Id.*) In August of 2014, additional imaging revealed herniated cervical discs. (R. 1000–01.) The flexion view revealed grade 1 anterolisthesis of C2 in relation to C3, C3 in relation to C4, and C4 in relation to C5. (*Id.*) A September 2014 CT scan showed disc space narrowing at C5-C6, mild to moderate narrowing of the central canal, mild narrowing of the neural foraminal bilaterally, marginal endplate osteophytes and disc bulge, and degenerative changes in the cervical spine mainly at C5-C6 and C6-C7. (R. 1004–05.)

The ALJ did not examine or discuss this evidence or any of the reports regarding Claimant's pain or limitations. While an ALJ need not mention every piece of evidence in her opinion, *see Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008), she is still obligated to consider all relevant medical evidence and may not cherry-pick facts by ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010). By ignoring or at least failing to indicate she considered abundant evidence supportive of Dr. Najera's opinion, the ALJ failed to create a logical bridge explaining how she concluded that Dr. Najera's opinion was based solely on Claimant's subjective complaints and not based on medical evidence.

The ALJ also referred to an April 2014 functional capacity evaluation ("FCE") to further discredit Dr. Najera's opinion. (R. 22.) The ALJ reasoned that the FCE contradicted Dr. Najera's opinion because it indicated that Claimant likely could perform sedentary[3] work, whereas Dr. Najera's opinion is more limiting than sedentary work would allow. (R. 22.) Claimant, however, argues that the FCE results tend to support Dr. Najera's opinion more than they contradict it. While it is not the purview of the Court to re-weigh the evidence, the Court shares Claimant's concern that the ALJ focused solely on the portions of the report that supported her conclusion that Claimant is not disabled. And this appears to be reflective of the ALJ's overall approach to Dr. Najera's opinion.

For example, the ALJ noted that Claimant was able to sit for over an hour during the evaluation. However, the ALJ failed to note that Claimant was only able to sit for an hour and thirteen minutes because the evaluator walked her through neck exercises to alleviate the pain

---

[3] While Claimant does not argue this point, it is worthwhile noting that the definition for sedentary listed in the functional capacity evaluation differs from the SSA definition for sedentary work. Sedentary as defined in the functional capacity evaluation is a lower standard than sedentary as defined by the SSA, finding that the physical demand requires the ability to lift or carry ten pounds only occasionally as opposed to the SSA definition of ability to lift or carry ten pounds frequently. (R. 983, 20 C.F.R. § 404.1567(a).) The ALJ incorrectly conflates the two in her decision.

9

enough to allow her to continue sitting. (R. 979, 46–47.) Claimant's ability to perform in testing over the course of three and a half hours does not necessarily negate Dr. Najera's opinion that Claimant could not sustain this level of activity for an eight-hour workday, five days a week. *See Scott v. Astrue*, 647 F.3d at 740 (holding that a claimant's ability to walk fifty feet in a doctor's office does not equate to an ability to sit, stand, or walk for six hours of a workday.) Further, the evaluator noted that Claimant could only sit for 30-60 minutes, that her active range of motion was limited for left shoulder flexion and extension, and that she completed tasks in a non-standardized position of standing with a mild stoop at approximately 30 degrees. (R. 943–84.) Claimant reported pain of 6/10 at the beginning of the evaluation and reported pain of 7/10 after completing the evaluation. (*Id.*) The evaluator noted signs of physical discomfort and pain during multiple portions of the exam, including shrugging shoulders, holding her neck, and massaging her neck. (*Id.*) Claimant's material handling was rated at fair to poor, and her left hand was in the 3.2 percentile for dexterity and 2.3 for assembly. (*Id.*) "The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits." *Scott*, 647 F.3d at 740 (citation omitted).

Although portions of Dr. Najera's opinion are more limiting than the FCE results, other portions are supported by the FCE report. The evaluator found that she could lift and carry ten pounds occasionally, as did Dr. Najera. (R. 983, 1008.) Dr. Najera found that Claimant had limitations in hand grasp, finger manipulation, reaching in front of body, and reaching overhead, and the evaluator noted similar limitations. (R. 943–84, 1008.) Moreover, Dr. Najera stated in his opinion that the FCE should be consulted for more accurate functional limitations, and his opinions are "approximations." (R. 1006–09.) Specifically, Dr. Najera noted that the ALJ should refer to the FCE for cervical range of motion, functional limitations regarding sitting and standing, the amount Claimant can lift and carry, and the limitations regarding Claimant's hands, fingers, and

arms. (R. 1006–08.) It is not clear to the Court that the ALJ adequately considered this evidence in evaluating Dr. Najera's opinion.

Finally, even assuming that the ALJ provided "good reasons" for not affording Dr. Najera's opinion controlling weight, she was still required to address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 96-2p.[4] SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Although Claimant does not directly address the issue in her briefs before the Court, the Court is particularly troubled by the ALJ's failure to articulate what weight, if any, he afforded Dr. Najera's opinion. "[T]he ALJ must at least consider the opinions of treating sources and explain what weight they are entitled to." *Williams v. Berryhill*, 707 F. App'x 402, 407 (7th Cir. 2017). The ALJ's decision cannot leave the weight given to the treating physician's testimony to mere inference: "the decision must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1006 (N.D. Ill. 2008).

Although the ALJ acknowledged that Dr. Najera had a treating relationship with Claimant, it is not clear the ALJ adequately considered several of the regulatory factors, including the nature and extent of the treatment relationship, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Najera had a relevant specialty. Dr. Najera is a pain management specialist whom Claimant has been seeing every one to two months since

---

[4] Although the SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, that rescission is effective only for claims filed as of March 17, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017).

2013. (R. 891–907, 1006.) A pain management specialist who sees a patient as frequently as Dr. Najera sees Claimant is in a better position to determine how a person's pain is affecting their daily life than a non-examining physician. In addition, Dr. Najera prescribed numerous medications and modalities of treatment, including physical therapy and multiple epidural steroid injections. (R. 719, 724, 898, 904–05, 907, 909.) The ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision.

For all these reasons, the ALJ did not offer substantial evidence for rejecting the opinion of Dr. Najera, which is an error requiring remand.

**B.      Other Issues**

Because the Court is remanding only on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Similarly, Claimant should make no assumptions either. Rather, it is simply unnecessary for the Court to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 18] is granted, and the Commissioner's Motion [ECF No. 25] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 21, 2018